Alan Eugene **REED** and Ivan Daniel Neighbors, Appellants,

v.

**UNITED STATES** of America, Appellee.

No. 20531.

United States Court of Appeals Ninth Circuit.

Aug. 9, 1966.

Rehearing Denied Sept. 14, 1966.

Joe S. Reynolds, Mesa, Ariz., for appellants.

William P. Copple, U. S., Atty., Lawrence Turoff, Asst. U. S. Atty., Phoenix, Ariz., for appellees.

Before HAMLEY, MERRILL, and ELY, Circuit Judges.

ELY, Circuit Judge:

This appeal is from judgments of conviction on three counts of transporting kidnapped persons in interstate commerce. 18 U.S.C. § 1201. The appellants are Alan Eugene Reed and Ivan Daniel Neighbors. A jury determined their guilt, and they were sentenced to three concurrent terms of sixty years imprisonment.

On January 27, 1965, Neighbors, under an assumed name, purchased a used 1959 white Ford station wagon in Ontario, California. On the following day, at approximately 11:15 p. m., there was an armed robbery at the Huddle Restaurant in West Covina, California. The appellants were identified at the trial by the assistant manager of the restaurant and by a patron who also identified the white station wagon. A customer of the restaurant was shot during the robbery, and he identified Reed as the assailant.[1]

The police having been called, an officer arrived in an automobile as the robbers were leaving the premises. This officer pursued the white Ford station wagon, continuing the chase even though the windshield of the police car had been shattered and one of the front tires punctured by bullets shot from a weapon fired from the station wagon. That officer gave up the chase when another police car appeared and took over. The second police car, meeting similar resistance of gunfire, was also forced to desist pursuit. Shortly thereafter the station wagon was discovered. It had been abandoned. In it were found five expended .351 caliber bullet casings.

A short distance from the location of the abandoned vehicle was the West Covina home of Mr. and Mrs. Lloyd McClane. At about 11:45 p. m., two men appeared there. They were identified by the McClanes and a visiting friend, Mrs. Robin Wilson, as Reed and Neighbors. The intruders ordered the three, at gunpoint, to enter the trunk of the McClane's automobile, a 1962 Chevrolet, blue-green in color. Nine hours later, in Yuma, Arizona, the McClanes and Mrs. Wilson realized that the machine which confined them had been deserted, and they managed to extricate themselves. Very shortly before, at approximately 8 o'clock a. m. on January 30th, a red and white 1955 Buick automobile had been purchased in Yuma. The purchaser was identified as Neighbors. He was seen talking to someone in a Chevrolet bearing California license plates just before he made the purchase. At the site where the McClane car was abandoned, a plaster cast of a footprint was taken. According to an expert produced by the prosecution, it matched one of the shoes being worn by Reed when he was subsequently apprehended.

[1] One is taught to seek information from its source, but such an attempt proved dangerous here.

The victim, a Mr. Young, hurried from the restaurant hoping to observe an automobile in which the robbers might be escaping and to record its license number. Running to a stranger, he inquired, "Did you see the two fellows that knocked off the coffee shop up in front?" The answer: "Yes, and I am about to knock you off. * * *" Young was shot as he ran again. He subsequently identified the appellant Reed as the stranger from whom he received the alarming answer to his well intended, but misdirected inquiry.

On February 1, 1965, an Oklahoma highway patrolman observed the red and white Buick on an Oklahoma highway. He had been alerted by an all-stations, all-points bulletin emanating from Yuma and describing the vehicle with its license number and its supposed occupants. Upon instructions from his superiors, the patrolman followed the automobile until a road block had been set up. The Buick was stopped, and one of the halting officers testified that he saw a rifle on the back seat. The appellants, who chose to testify only during preliminary proceedings, swore that the rifle was concealed beneath other articles. Its caliber was .351. The officers ordered appellants from the car and searched their persons. Revolvers were found. There was an incidental search of the automobile.

At the scene of the arrest, the Oklahoma police released the appellants to the custody of agents of the Federal Bureau of Investigation. Soon thereafter, Reed's shoes were forwarded to Washington for comparison with the plaster cast which had been made in Yuma.

Appellants contend that the trial court erred in denying their motions to return seized property and to suppress evidence. The motions were aimed at items obtained as products of the searches made at the time of the arrests. Of these items, only the rifle was eventually received into evidence. No warrant for the searches had been procured.

■■ A search and seizure incident to a lawful arrest is not violative of the Fourth Amendment. Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925). See Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L. Ed.2d 777 (1964). The immediate question, then, is whether the arrests were lawful. Since no federal statute is applicable, "the law of the state where an arrest without warrant takes place determines its validity." United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L. Ed. 210 (1948).

The controlling Oklahoma statute provides,

"A peace officer may, without a warrant, arrest a person:

"1. For a public offense, committed or attempted in his presence.

"2. When the person arrested has committed a felony, although not in his presence.

"3. When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it.

"4. On a charge, made upon reasonable cause, of the commission of a felony by the party arrested."

Okla.Stat.Ann. tit. 22, § 196 (1937).

The action of the Oklahoma Highway Patrol was taken upon the basis of its receipt of the all-stations, all-points bulletin, which reads,

"All stations. Wanted, investigation kidnapping. No. 1. White Male, 35, 5-11, 190, dark hair, wearing dark suit or sport coat.

"No. 2. White male, 28 to 30, 5-11, 165, wearing dark suit, driving white and red or tan and red '55 Buick hardtop two-door, Arizona license FHG-772, serial number 481198130, purchased by subject using name Richard L. Evans. Stop. Subjects may be identical to bandits who committed vicious armed robbery in West Covina, California, January 29 of 1965, in which some people were shot. Victims of kidnapping may have been taken from scene of armed robbery. Stop. Subjects are armed and considered extremely dangerous. Authority, F.B.I., Yuma, Arizona."

■ Immediately following their arrests, Neighbors and Reed were told by one of the several state officers that they were arrested because they were carrying concealed weapons, an Oklahoma misdemeanor offense. Okl.Stat.Ann. tit. 21, §§ 1271, 1276 (1951). The suspects were, in fact, committing the offense in the presence of the officers, and the officers had reliable advance information that they were doing so. Whether or not these facts justified the arrest under subsection 1 of the Oklahoma ar-

rest-without-warrant statute, quoted *supra*, and regardless of what the appellants were told by the one officer, the truth appears to be that they were taken into custody because they were suspected of having committed the federal felony offense of kidnapping. Surely, they were not surrendered to federal officers at the scene of the arrests because of their commission of an Oklahoma misdemeanor offense. The Oklahoma courts have clearly held that a peace officer of that state may, without a warrant, lawfully arrest a person if the police officer suspects, because of facts communicated to him by others, that a felony has been committed and if he has reasonable grounds to believe that the person he arrests is the offender. Booze v. State, 390 P.2d 261 (Okl.Cr.1964); Darks v. State, 273 P.2d 880 (Okl.Cr.1954); Welch v. State, 30 Okl.Cr. 330, 236 P. 68 (1925).

■ Oklahoma law requires that an arrested person be produced before a magistrate "without unnecessary delay". Okl.Stat.Ann. tit. 22, §§ 176, 181, 206 (1937). Here, the arrested men were surrendered to federal officers. This, done at the scene of the arrests, did not operate to alter the lawful character of the arrests which had already been made. A related problem confronted Oklahoma's Court of Criminal Appeals in In Re Dare, 370 P.2d 846 (Okl.Cr.1962). The court held that an Oklahoma officer was not always required to produce an arrested person before a magistrate of the county wherein the arrest was made. It decided that "the arresting officer should transfer custody of the accused to an officer of the county having jurisdiction over the offense without unnecessary delay." 370 P.2d, at 853. In our case, the accused were transferred to officers of the appropriate jurisdictional body without any significant delay whatsoever. Since the arrests were lawful, the incidental searches were lawful. The trial court did not err in denying appellants' motions.

The appellants next urge that the trial court erred in admitting evidence with regard to the robbery of the California restaurant. They insist that the armed robbery was wholly disconnected from the crime which was charged and for which they were being tried.

■■ Evidence of other crimes, despite its prejudicial effect, is admissible to establish motive if it is of high relevance. McCormick, Evidence § 157, p. 330 (1954). This court has held such evidence admissible for the purposes of showing intent, design, knowledge, or lack of innocent purpose. E. g., Medrano v. United States, 285 F.2d 23, 25–26 (9th Cir. 1960), cert. denied, 366 U.S. 968, 81 S.Ct. 1931, 6 L.Ed.2d 1258 (1961). Here, the purpose of the questioned evidence was to show motive for the kidnapping. The prosecution doubtless reasoned that a jury, deprived of the evidence, might have some difficulty in believing that two men would intrude upon a strange residence late in the nighttime, abduct three adults, lock them in the trunk of an automobile, and transport them across a state boundary.

The evidence was, of course, prejudicial to the appellants, but it was highly relevant and it was introduced for a proper purpose. There was no error in its admission.

Appellants' contention that the trial court erred in refusing to grant a motion for mistrial based on the admission of evidence of the armed robbery falls with our rejection of the claim that the evidence was erroneously received.

■ The final two contentions of the appellants present claims that the trial court erred in denying motions for judgments of acquittal, in submitting the issues of guilt or innocence to the jury, and in failing to grant Reed's motion for a new trial. Included in these contentions are references to the evidentiary questions which we have discussed and argument that the evidence was insufficient to support the determination of guilt. Appointed counsel has exerted himself valiantly, both here and in the

court below, but the evidence is more than sufficient. Carefully mustered and presented, it damned the accused beyond reasonable possibility of exculpation.

Affirmed.