**John A. METHEANY, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 22026.**

United States Court of Appeals Ninth Circuit.

Feb. 14, 1968.

Rehearing Denied March 28, 1968.

Sheldon Green (argued), Mariscal, Goss, Green & Corbet, Phoenix, Ariz., for appellant.

Richard C. Gormley (argued), Asst. U. S. Atty., Edward E. Davis, U. S. Atty., Phoenix, Ariz., for appellee.

Before BARNES, MERRILL and KOELSCH, Circuit Judges.

BARNES, Circuit Judge:

This is the second time this matter has come before us. In order that this appeal may be understood, we adopt as accurate portions of the factual recitals contained in the Appellee's Brief, as follows:

"In September of 1962 the Appellant John A. Metheany was indicted on one count of concealment of assets in bankruptcy and four counts alleging the making of a false oath. He was indicted along with a codefendant, G. Ronald Dotson, who was indicted for concealment of assets (not the same assets that the appellant allegedly concealed). In March of 1964 the Defendant and his codefendant were convicted on all counts by a jury in Phoenix, Arizona, in the United States District Court for the District of Arizona. * * * In August, 1966, this Court reversed the conviction of the District Court. * * * See Metheany v. United States, 365 F.2d 90 (9th Cir. 1966)."

In that opinion, we ruled against appellant when he claimed there was insufficient evidence to convict him on each of the several counts. We held the proof produced in that case was sufficient to show the falsity of the answers given by him, which had formed the basis of Counts III, IV and V; and we also held that "the several false answers were highly material." We granted a new trial, however, on the ground of improper joinder—that appellant and his codefendant were entitled to separate trials of the "distinct and separate offenses not parts of the same transaction or connected together." Rule 8(b), Fed.R.Crim.P.

Prior to the new trial, on motion of the appellant, the concealment of assets count (Count I) was severed from the four false oath counts. The first count was tried before a jury, and appellant was found not guilty. A third jury was empaneled to try the four false oath counts, but a mistrial was declared. On retrial, a fourth jury returned a verdict of guilty as to three of the four false oath counts —III, IV and VI [1]—and a verdict of not guilty as to Count V.

1. Count II related to Dotson's alleged concealment of assets; Count III related to when appellant had ceased to act as an attorney for the bankrupt; Count IV related to appellant's knowledge of who was the attorney for the bankrupt corporation.

Appellant was sentenced to two years on each count, the sentences to run concurrently.

Jurisdiction below rested on 18 U.S.C. § 152, and rests here on 28 U.S.C. § 1291.

■ Because Counts III, IV and VI were tried a second time, and perhaps with different evidence, our previous opinion cannot be the law of the case. However, none of the points raised by appellant on his first appeal are raised on this appeal. Here he urges four errors:

1. That the refusal to give requested instruction No. 4 was error.

2. That the refusal to give defendant's requested instruction No. 1 was error.

3. That Counts III and IV are contradictory to each other, and it was error to charge both.

4. That it was error to admit certain evidence relating to the crime of concealment of assets.

None of the points raised on this appeal have merit.

■■ 1. Proposed instruction No. 4 tells the jury, as a matter of law, there was no "valid and legal" transfer of the stock from Albert Sandoval. Appellant was not asked whether there was a valid and legal transfer of the stock. He was asked "to whom did he [Sandoval] dispose of his stock." He answered he "didn't know." When pressed, "You don't know?", he replied, "I know that he did; I didn't handle that transaction." There was evidence he did know, because he himself "handled it" on April 29, 1960. This was the testimony of two witnesses (Dotson and Sandoval) which was substantiated by two contemporaneously executed Exhibits (13 and 15). Sandoval testified the stock was sold to Sally Dotson for $100 in the presence of appellant,

his wife, Ron Dotson and Sandoval's father; that he signed a bill of sale prepared by appellant. Exhibit 13 is a promissory note, dated April 29, 1960, signed by Sally Dotson, payable to Albert Sandoval, bearing the notation: "In consideration of the purchase of stock in Quality Upholstering, Inc., in the amount of 2500 shares." Exhibit 15 is a purported copy of the minutes of a meeting of the Board of Directors of said corporation, held on April 29, 1960. These minutes were prepared by appellant (R.T. 359), and read in part: "The transfer of stock in the sum of 2500 from Albert L. Sandoval to Sally A. Dotson on the books of the corporation was approved."

Sandoval also testified he endorsed the stock certificates and mailed them to appellant.

With this evidence in support of Count VI, as well as other evidence before the jury, the instruction, in the form presented, was neither proper nor required. The jury was instructed carefully and at length on the subject by the trial court. The five essential elements of the charges made in Counts III, IV, V and VI were outlined: (1) the existence of the bankruptcy proceedings; (2) that a statement under oath was made therein, or in relation thereto; (3) that the oath was as to a material fact; (4) that the oath was false; (5) that the oath was knowingly and fraudulently false (R.T. 387–392). The first three essential elements were either admitted, undisputed, or matters of law. The last two were disputed— "very much disputed"—as the trial court instructed the jury. And their resolution was committed to the jury.

But even if some further instruction was required on the issue of the transfer of the stock, the language of the proffered instruction does not fit the evidence before the court.[2] There was evidence to

_____

2. As an example, requested instruction No. 4 states as a fact: "and that there is no evidence that the stock was properly endorsed." Appellant's Brief repeats this statement: "There is no evidence whatsoever to indicate that Albert Sandoval's stock certificate was endorsed." (Open-

ing Brief, p. 9.) Appellant then refers to Vol. I, pp. 57–58, where an attempt to impeach Sandoval by reading his testimony at the previous trial, where he had said he "thought" he had mailed the certificates back to appellant. Completely ignored is Sandoval's direct testimony (Vol. I, p. 52) where he said he "had"

support the conclusion that there had been a transfer of the stock by a precise compliance with Title 10, § 231, Arizona Rev.Stat., subsec. A, par. 1.

We hold the refusal to give requested instruction No. 4 was not error.

■ 2. The refusal to give instruction No. 1, as requested, was denied as "covered." The court had already given careful and detailed instructions on the falsity of the answers, and that before determining the falsity the jury must determine "what the question meant." (R.T. 388–391.) Appellant withdrew his requested instruction No. 3 because it had been covered by the court. Appellant's counsel stated that was why he had withdrawn it—"the matter was covered elsewhere" (R.T. 400). Instruction No. 3 was based on United States v. Lattimore, 127 F.Supp. 405 (D.D.C.1955), and appears in the margin.[3] If instruction No. 3 was withdrawn as covered, we see no reason No. 1 was not covered.

We agree that requested instruction No. 1 was adequately and fully covered by other instructions, and find no error in its exclusion.

■ 3. As to the overlapping of Counts III and IV, we find there was no overlapping. The first question asked for a date; the second, for the possible name of an attorney. The falsity of Count III was established by sufficient competent evidence, both oral (four witnesses) and written (Exs. 6 and 7). The falsity of Count IV was established, both by the uncontradicted testimony of Attorney Bergman (R.T. 68, 75), and appellant's own signature in Exhibits 31 and 32.

4. The evidence (and particularly checks marked Exs. 10A, 10B and 37) relating to appellant's handling of money in pre-bankruptcy proceedings was offered to prove the motive for, or the intent of, his false answers, made shortly thereafter.[4] The court admitted them for the limited purpose of showing appellant's state of mind (R.T. 213, 335), or intent (R.T. 213). The jury was instructed of

---

mailed the certificates back to appellant. There then appears:

"Q. Did you sign the back of them [certificates] before you mailed them?
"A. Yes, sir.
"Q. The form on the back?
"A. Yes, sir."

No impeachment of this "endorsement" testimony was attempted.

3. "You are further instructed that before you may conclude that the crime of giving a false oath has been committed, it must be determined what the words meant to the defendant at the time he offered them as his testimony and then conclude that the defendant did not at that time believe in the truth of such testimony according to the meaning he ascribed to the words and phrases he used. It does not make any difference whether the statements were true or false. The defendant's belief as to their truth or falsity is the issue."

4. These exhibits were:
 (a) Check #2873 of John A. Metheany, Trustee, payable to "Sun Drapery," dated May 24, 1960, in the sum of $775.80 (Ex. 10B).
 (b) Check #2874 of John A. Metheany, Trustee, payable to "Marko Fabric," dated

May 27, 1960, in the sum of $510.00 (total: $1,285.80) (Ex. 10A).
 (c) Check #2844 of John A. Metheany, Trustee, payable to "Factors Furniture," dated May 10, 1960, in the sum of $805.40 (Ex. 37).

There was also reference to a listed alleged creditor, "Riviera $97.25", said to be fictitious. This check was not cashed.

There was evidence each named above payee was fictitious; there were no such creditors. (R.T. 198–99.) On May 27, 1960, appellant Metheany wrote Sandoval that he had made such disbursements (Ex. 18) out of the $5,800 advanced by Sandoval to appellant on April 29th, 1960 (Ex. 16), for which Metheany gave a receipt (Ex. 17) and expressed the Trust purposes.

Appellant later, on December 10, 1961, repayed Sandoval $1,285.80 and on the check stated: "Repayment by Ron Dotson and Sally Dotson for funds advanced to pay Marko Fabric $510.00 and Sun Drapery $775.80. Endorser payee directs attorney to turn over cancelled checks to Dotson in exchange for their payment."

Dotson admitted endorsing Exhibits 10A and B above, but denied receiving any proceeds thereof, and denied he had ever given money to Metheany to repay Sandoval.

the limited purpose for which the evidence was admitted (R.T. 384).

■ Proof admitted for the limited purpose of showing state of mind or intent, even proof of other crimes, is a well recognized exception to the general rule of inadmissibility. Reed v. United States, 364 F.2d 630, 633 (9th Cir. 1966), cert. denied, 386 U.S. 918, 87 S.Ct. 878, 17 L.Ed.2d 789 (1967). See Medrano v. United States, 285 F.2d 23, 25–26 (9th Cir. 1960), cert. denied, 366 U.S. 968, 81 S.Ct. 1931, 6 L.Ed.2d 1258 (1961); cf. Himmelfarb v. United States, 175 F.2d 924 (9th Cir. 1949).

■■ The Reply Brief for appellant limits itself to appellant's fourth alleged error—the evidence of the manner in which appellant "handled the funds entrusted to him by Sandoval. * * * It * * * was not an essential element of the crime." (Reply Brief, p. 2.) That is correct. "It had nothing to do with the crime whatsoever." (Reply Brief, p. 2.) That is incorrect. "We make the forthright assertion * * * that this prejudiced the jury." (Reply Brief, p. 2.) If we change the word "prejudiced" to "influenced" the jury, we think the statement more accurate, and we agree.

We are repeatedly told "the government used it purely as motive." We agree the government used it to prove motive. This is alleged to constitute error "by reason of collateral estoppel and res adjudicata." We cannot agree.

We are told the government "relies solely on the theory that the evidence was admissible, for negating the possibly innocent focus of the defendant, and as proving the defendant's motive for perjuring himself." (Reply Brief, p. 3.) We are not certain we understand the meaning of this sentence, but, in general, we agree. That is why it is admissible.

Appellant seeks unsuccessfully to distinguish Reed v. United States, 364 F.2d 630, where this court held as follows:

"Evidence of other crimes, despite its prejudicial effect, is admissible to establish motive if it is of high relevance. McCormick, Evidence § 157, p. 330 (1954). This court has held such evidence admissible for the purposes of showing intent, design, knowledge, or lack of innocent purpose. E. g., Medrano v. United States, 285 F.2d 23, 25–26 (9th Cir. 1960), cert. denied, 366 U.S. 968, 81 S.Ct. 1931, 6 L.Ed.2d 1258 (1961). Here, the purpose of the questioned evidence was to show motive for the kidnapping. The prosecution doubtless reasoned that a jury, deprived of the evidence, might have some difficulty in believing that two men would intrude upon a strange residence late in the nighttime, abduct three adults, lock them in the trunk of an automobile, and transport them across a state boundary.

"The evidence was, of course, prejudicial to the appellants, but it was highly relevant and it was introduced for a proper purpose. There was no error in its admission." 364 F.2d at 633.

Nor can we find United States v. Kramer, 289 F.2d 902 (2d Cir. 1961), or United States v. De Angelo, 138 F.2d 466 (3rd Cir. 1943), pertinent. In both *Kramer* and *De Angelo*, the defendant was acquitted of a charge of burglary, or robbery, and was then indicted on a charge of conspiracy to commit the same burglaries, or the same robberies.

Evidence to prove one fact in one trial is not per se inadmissible to prove the same or another fact in another trial charging a different and second crime.

We find no error with respect to the admission of evidence for the limited purposes for which it was offered, admitted and considered.

Finding no error in any respect, we affirm the three count conviction.