ZARO LICENSING, INC., etc., and Zaro Franchise Realty Corporation, etc., Plaintiffs,

v.

CINMAR, INC., Steven Chiappa, Ximena Chiappa, John Hogan, Margaret Hogan, Peter M. Gandolfo, Garden State Bake Shoppes, Inc., Roy Knofla and Nancy J. Knofla, Defendants and/or Third–Party Plaintiffs,

v.

ZARO BAKE SHOPPES, INC., Stuart Zaro, Phillip Zaro, Andrew Zaro, Joseph Zaro, Albert Firstman, Seymour I. Friedman, Harold L. Kestenbaum, Richard M. Glazer and Glazer Lustig & Glazer, Additional Defendants.

No. 89 Civ. 8535 (RWS).

United States District Court, S.D. New York.

Nov. 18, 1991.

Rivkin, Radler, Bayh, Hart & Kremer, Uniondale, N.Y. (Kevin J. Harrington, Steven A. Chernis, James W. Weller, of counsel), for plaintiffs.

Zane and Rudofsky, New York City (James B. Zane, David P. Rubinstein, of counsel), for defendants and/or third-party plaintiffs.

Kennedy & Casey, P.C., Garden City, N.Y. (Robert A. Kennedy, Robert J. Barsch, of counsel), for additional defendants.

SWEET, District Judge.

Zaro Bake Shops, Inc. ("Bake Shops"), Zaro Licensing, Inc. ("Licensing"), Zaro Franchise Realty Corp. ("Realty"), Phillip Zaro, Stuart Zaro, Andrew Zaro, Joseph Zaro, Albert Firstman and Seymour I. Friedman ("Friedman; collectively "Zaro") and additional defendants Harold Kestenbaum ("Kestenbaum"), Richard M. Glazer ("Glazer") and Glazer Lustig & Glazer (the "Glazer Firm"; all collectively the "Movants") have moved under Rules 8, 9(b), 12(b)(6) and 56 of the Federal Rules of Civil Procedure to dismiss the counterclaims and third-party claims of Cinmar, Inc. ("Cinmar"), Steven Chiappa, Ximena Chiappa, John Hogan, Margaret Hogan, Peter M.

Gandolfo, Garden State Bake Shops, Inc. ("Garden State"), Roy Knofla and Nancy J. Knofla (collectively "Franchisees"). The motions are granted in part and denied in part as set forth below.

### Prior Proceedings

On November 6, 1989, Licensing and Realty brought an action in the United States District Court for the District of New Jersey seeking, among other things, monetary damages for Cinmar's failures to meet certain of its obligations under a franchise agreement and a related sublease Cinmar had signed with Licensing and Realtor, including the failure since January 1989 to pay contractually required licensing fees and billings for certain baked goods delivered to Cinmar.

During the pendency of the New Jersey action, the Franchisees filed an action in this Court against Zaro, mirroring in the complaint the defenses and counterclaims alleged in the New Jersey action. After the denial of certain preliminary relief, the New Jersey action was transferred to this Court. For purposes of these motions, the New York action is deemed to have been consolidated with the transferred New Jersey action.

Cinmar, its officers and directors, Garden State and its officers and directors, and the Knoflas filed their first answer and counterclaims on September 17, 1990. The Zaros moved to dismiss the counterclaims. Instead of opposing the motion, the Franchisees redrafted the answer and counterclaims and filed a First Consolidated Amended and Supplemental Answer, Affirmative Defenses, Counterclaims and Third–Party Complaints ("Counterclaims") on December 21, 1990. These counterclaims are the subject of the instant motions and were heard initially on April 19, 1991. Thereafter a settlement was reached with certain of the parties, and the motions were in effect withdrawn to permit further settlement discussions. On August 6, 1991, the motions were renewed upon the original papers and considered submitted as of that date.

Cinmar is presently in reorganization proceedings pursuant to 11 U.S.C., Chapter 11 in the District of New Jersey, and this action is, accordingly, stated as against Cinmar as a matter of law pursuant to 11 U.S.C. § 362. On March 19, 1991, a settlement with respect to Cinmar was reported to the Bankruptcy Court, and all claims by and against Cinmar, the Chiappas and the Hogans in this action have been withdrawn.

### The Facts

Bake Shops, Licensing and Realty are corporations organized under the laws of the State of New York. At times past, Licensing granted franchises to individuals and entities to own and operate retail bakery franchises under the Zaro trademark. Realty has been in the business of leasing properties to Zaro franchisees so that they each may operate, on such premises, a bakery under the Zaro trademark.

In the process of establishing its business, Licensing submitted a proposed franchise offering prospectus to the New York State Department of Law on October 5, 1983.

Following revisions, the prospectus was duly accepted and registered by the Department of Law on October 31, 1983. On July 31, 1984, amendments to the prospectus were mailed to the Department of Law and on August 13, 1984, the Department of Law acknowledged that these amendments had been filed, thus constituting a duly registered First Amended prospectus. On February 21, 1985, Licensing mailed proposed amendments to the previously filed and registered prospectus a second time. By a letter dated March 25, 1985, the Department of Law wrote to Kestenbaum, Licensing's attorney, and noted twenty-one changes that had to be made before the amendments could be incorporated into the filed prospectus. The amendments were resubmitted on June 6, 1985.

By a letter to Kestenbaum dated June 19, 1985, the Department of Law noted four final changes that still had to be made to Licensing's draft amendments before these amendments could be incorporated into the franchise offering prospectus on file. If these changes were not made, the

"franchise registration" was to be considered abandoned in two weeks, on or about July 4, 1985. *No hearing was ever held*, in accordance with 13 N.Y.C.R.R. § 201.1 *et seq.*

On June 13, 1985, the Knoflas executed a franchisee agreement with Licensing and a related sublease agreement. On June 26, 1985, Cinmar signed a franchise agreement with Licensing and an agreement with Realty to lease space from Realty at which to operate its Zaro's franchise. In April 1986, Gandolfo also executed integrated franchise and lease agreements.

Over the course of the relationship between the parties, disputes developed over the licensing fees, the billings for goods sold and delivered, and other matters, culminating in this action.

### The Counterclaims

Fourteen causes of action are set out in the Counterclaims arising out of over 150 paragraphs of alleged "specific events." Each claim for relief incorporates these allegations by reference.

According to the Franchisees (Franchisees' Memo in Opp. 14–15), the Counterclaims allege:

(a) an intentional scheme to defraud Franchisees by the sale of economically unfeasible franchises through undercapitalized corporate entities, false offering statements and false and misleading advertising materials;

(b) material misrepresentations and misrepresentations by omissions in the sale of franchises to Franchisees;

(c) violations of statutory and regulatory duties to disclose pending applications to amend the franchise offering prospectus, and to escrow funds and offer a right of rescission after the abandonment of the offering plan;

(d) breaches of contract by failing to provide Franchisees with an economically viable franchise system and necessary and adequate training; by requiring the purchasing of Zaro's products at inflated and commercially unreasonable and unconscionable prices, and the purchasing of spoiled, adulterated and impure products; by failing to deliver Zaro's products on an orderly and timely basis; by discriminating in favor of other franchisees; and, in general, by failing to deal with the Franchisees in good faith;

(e) violation of statutory duties and standards of fair dealing imposed under the New York General Business Law, the New Jersey Consumer Fraud and Franchise Practices Acts, and the Connecticut Unfair Trade Practices and Franchise Acts; and

(f) RICO violations.

The Franchisees also have asserted claims for equitable relief, including the imposition of a constructive trust, disgorgement, reformation of any agreements between the parties and recoupment.

### Discussion

#### I. *RICO*

Franchisees allege in their first four counterclaims that the Movants committed multiple violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO"). Because the Franchisees have failed to plead the predicate acts upon which these alleged violations are premised with sufficient particularity, the RICO counterclaims are dismissed pursuant to Rule 9(b) of the Federal Rules of Civil Procedure.

■ To state a cause of action under RICO, the Franchisees must allege

(1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate commerce.

*Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 17 (2d Cir.1983), *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984). It also is well-settled that where the predicate crimes of a RICO claim sound in fraud, as here, the pleading of those predicate acts must satisfy the particularity requirement of Rule 9(b), Fed.R.Civ.P. 9(b). *See Morin v. Trupin,* 711 F.Supp. 97, 111 (S.D.N.Y.1989); *Gregoris Motors v. Nissan Motor Corp.,* 630 F.Supp. 902, 912–13

(E.D.N.Y.1986). In fact, "all of the concerns that dictate that fraud be pleaded with particularity exist with even greater urgency in civil RICO actions." *Plount v. American Home Assurance Co.,* 668 F.Supp. 204, 206 (S.D.N.Y.1987). Moreover, allegations of mail and wire fraud must specify the use of the mails and wires with particularity. *Frota v. Prudential–Bache Securities, Inc.,* 639 F.Supp. 1186, 1192 (S.D.N.Y.1986).

Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R.Civ.P. 9(b). Allegations of fraud must therefore specify the fraudulent statement, the time, place, speaker and content of the alleged misrepresentations, *Luce v. Edelstein,* 802 F.2d 49, 54 (2d Cir.1986); *Conan Properties, Inc. v. Mattel, Inc.,* 619 F.Supp. 1167, 1172 (S.D.N.Y.1985), and factual circumstances giving rise to a strong inference that the defendant had the requisite fraudulent intent, *Ouaknine v. MacFarlane,* 897 F.2d 75, 80 (2d Cir.1990); *Stern v. Leucadia National Corp.,* 844 F.2d 997, 1004 (2d Cir.), *cert. denied,* 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988). Specifically the complaint must allege "(1) specific facts; (2) sources that support the alleged specific facts; and (3) a basis from which an inference of fraud may fairly be drawn." *Crystal v. Foy,* 562 F.Supp. 422, 425 (S.D.N.Y.1983).

■ "Racketeering activity" is defined by 18 U.S.C. § 1961(1) as "any act or threat involving ... extortion ... which is chargeable under State law and punishable by imprisonment for more than one year; any act which is indictable under any of the following provisions of title 18, United States Code: ... section 1341 (relating to mail fraud), ... section 1343 (relating to wire fraud), ... section 1503 (relating to obstruction of justice), ... [or] any offense involving fraud connected with a case under title 11 ...." For their to be a "pattern of racketeering activity," their must be at least two racketeering acts that constitute continuing criminal activity. 18 U.S.C. § 1961(5); *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).

The Franchisees allege that:

[t]he predicate acts complained of in the Counterclaims and Third–Party Complaint alleged herein constitute "racketeering activity" as that term is defined in, and for purposes of, 18 U.S.C. § 1961(1), in that the predicate acts include multiple acts indictable under 18 U.S.C. § 1341 and § 1343, relating to mail and wire fraud, one or more acts of extortion chargeable under State law and punishable by imprisonment for more than one year, multiple acts indictable under 18 U.S.C. § 1503, relating to endeavors to obstruct the due administration of justice, and one or more acts constituting an offense involving fraud connected with a case under Title 11 of the United States Code, to wit, violation of 18 U.S.C. § 152 as alleged herein.

The racketeering activity described above, and in greater detail elsewhere in the Counterclaims and Third–Party Complaint alleged herein, constitutes a "pattern of racketeering activity" as the term is defined in, and for purposes of, 18 U.S.C. § 1961(5), because the racketeering predicates (*i*) are more than two in number; (*ii*) are "related" in that they were all carried out within ten (10) years immediately preceding the commencement of the action and had common goals, a similarity of method and the same or similar results, participants and victims, and (*iii*) amount to, or pose a threat of, continued criminal activity in that, among other things, they were not isolated or sporadic and were all committed in the regular course of the ongoing Franchising Enterprise's affairs.

Counterclaims ¶¶ 177–78. Presumably, the reference to the acts "alleged herein" not only intends to include any relevant activity generally described in ¶¶ 65–174, but any matter alleged anywhere in the Counterclaims.

Section 1341 defines mail fraud and provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representation or promises ... places in any post office or authorized depository for mail matter ... shall be fined....

Section 1343 defines wire fraud in an essentially similar manner.

The Franchisees seem to allege the following uses of the mail and wires as RICO predicate acts:

(a) the mailing to the Secretary of State of the various prospecti, advertising materials, and financial statements, *id.* ¶¶ 65, 70, 74, 79, 80, 85, 89, 93, 103, 121;

(b) the sending of the Friedman affidavit by telefax and mail, *id.* ¶¶ 149, 151;

(c) Kestenbaum's letters sent by mail and telefax relating to document discovery requests, *id.* ¶¶ 155, 157;

(d) various letters sent by the Zaros and the Franchisors demanding payment of contractually required fees and threatening termination of the franchises for various defaults, *id.* ¶¶ 143, 159, 171; and

(e) letters sent regarding the transferability of the Gandolfo franchise, *id.* ¶¶ 160, 161.

None of these alleged predicate acts of fraud is pled with the particularity required by Rule 9(b).

For example, most of the allegations concerning communications with the Secretary of State simply quote a section of a document and then allege that the statement was false. *See, e.g., id.* ¶ 67. The others are blanket allegations of wrongdoing, with no pleading of what the exact nature of the fraud was nor of any acts from which scienter can be inferred. This is compounded by the failure to properly plead under the mail and wire fraud statutes that the individual acts of fraud were undertaken as part of any "scheme or artifice to commit fraud." *See United States v. Starr,* 816 F.2d 94, 98 (2d Cir.1987); *United States v. Reid,* 533 F.2d 1255, 1261 (D.C.Cir.1976); *United States v. Knutson,* 180 F.Supp. 741, 742 (D.Ind.1960).

In *Atlantic Gypsum Co. v. Lloyds International Corp.,* 753 F.Supp. 505 (S.D.N.Y.1990), plaintiffs alleged, in pleadings similar to the allegations here, that the defendant loan institutions engaged in a scheme to advance substantial funds to plaintiffs and then force them to default on the loans, thus gaining control of their assets. The court found that "plaintiffs' view of the facts defie[d] economic reason and therefore d[id] not yield a reasonable inference of fraudulent intent." *Id.* at 514.

Instead, the court found that at best the allegations centered around a business dispute involving a breach of contract. That the plaintiffs embellished this breach by setting forth the contents of various documents, correspondence, telefaxes, telephone calls and meetings between the parties did not support the existence of a RICO scheme, requiring dismissal. *Id.* at 512; *see also A. Burton White, M.D., P.C. v. Beer,* 679 F.Supp. 207, 211 (E.D.N.Y.1988). Indeed, the court noted that most of the alleged RICO communications were motivated by the defendants' desire to have their loans repaid, "a desire neither surprising nor sinister." *Atlantic Gypsum,* 753 F.Supp. at 512.

As in *Atlantic Gypsum,* Franchisees allege here that the franchises were sold to them not because the Zaros desired to make money from successful franchising operations, but so that they could profit from the initial fees and whatever royalties were collected before the franchisees (whose stores bore the Zaro family name and hence reputation) collapsed in failure.

Charges that certain Movants agreed to "aid and abet" each other in the "scheme" require a pleading with particular facts, facts which Franchisees have not provided. Absent particularity as to each participant's assent to the alleged "scheme" or "conspiracy," Franchisees' allegations of mail or wire fraud cannot be sustained. *Atlantic Gypsum,* 753 F.Supp. at 513; *Beauford v. Helmsley,* 740 F.Supp. 201, 213 (S.D.N.Y.1990).

Franchisees also allege as predicate acts that the "conspirators and aiders and abet-

tors," Counterclaims ¶ 175, obstructed justice through fraudulent acts in violation of 18 U.S.C. § 1503 and 18 U.S.C. § 152. Assuming that by this the Franchisees mean the submission of an allegedly false declaration by Friedman to the court, the raising of various defenses during discovery, or the efforts of Zaro to modify the automatic stay on Cinmar's bankruptcy proceeding, the Franchisees have failed to supply with sufficient particularity facts giving notice of what is fraudulent about each of these events. *See, e.g., Metheany v. United States,* 390 F.2d 559 (9th Cir.), *cert. denied,* 393 U.S. 824, 89 S.Ct. 81, 21 L.Ed.2d 94 (1968).

■ Franchisees add claims of extortion in their attempt to plead predicate acts. This seems to be an allegation that Zaro threatened to terminate their franchises if licensing fees were not paid. The threat to do that which one is contractually permitted to do is not extortion and cannot possibly fall within any imaginable criminal definition of extortion. *Gregoris Motors,* 630 F.Supp. at 913.[1]

The Franchisees have therefore failed to plead the required predicate acts with sufficient particularity. For this reason alone, the Counterclaims are dismissed. However, to avoid further filings that fail to comply, additional infirmities in the RICO pleadings are noted below.

The Franchisees assert violations of 18 U.S.C. § 1962(a) and (b). These sections of RICO seek to prevent criminals from investing in or taking over and maintaining previously legitimate businesses. *See United States v. Turkette,* 452 U.S. 576, 584, 101 S.Ct. 2524, 2529, 69 L.Ed.2d 246 (1981).

■ With regard to the § 1962(a) claim, a violation of this section is not established by showing participation in the alleged pattern of racketeering activity, or the derivation of income from that pattern, but is established instead by showing the use or investment of that income in acquiring, es-

tablishing or operating an enterprise. *Ouaknine,* 897 F.2d at 82.

■ Franchisees' complaint fails to meet this standard. Franchisees merely allege that "income" was invested to fund a RICO enterprise. In fact, Franchisees admit that they:

> have not as yet ascertained the portion of the income derived ... through a [pattern of racketeering activity] ... which has been used or invested ... to fund the operation of the franchising enterprise.

Counterclaims ¶ 179. Also, as in *Ouaknine,* Franchisees also allege that they were injured by the predicate acts, not by the use or investment of the income in some enterprise. Finally, allegations that illicit income was used or invested in an enterprise, without explaining how such use or investment caused the injuries alleged, fail to state a claim under § 1962(a). *Ouaknine,* 897 F.2d at 83; *Williamson v. Simon & Schuster,* 735 F.Supp. 565, 568 (S.D.N.Y.1990); *Azurite Corp. v. Amster & Co.,* 730 F.Supp. 571, 579 (S.D.N.Y.1990). Franchisees' conclusory allegations that they "have been injured in their business and property by the reason of the violation of 18 U.S.C. § 1962(a) ...," do not meet this standard. Counterclaims ¶ 180.

Franchisees likewise fail to state any facts suggesting that Movants acquired or maintained the purported RICO enterprise through a pattern of racketeering activity, potentially defeating a § 1962(b) claim. *See United States v. Biasucci,* 786 F.2d 504, 516 (2d Cir.) (noting that while 1962(c) prohibits the conducting of a RICO enterprise, a claim under 1962(b) must focus on the acquisition or maintenance of the enterprise), *cert. denied,* 479 U.S. 827, 107 S.Ct. 104, 93 L.Ed.2d 54 (1986).

■ Finally, the Franchisees' broad claim that movants "knowingly committed or agreed to commit two or more RICO predicate acts ...," in violation of 18 U.S.C. § 1962(d) is insufficient. Counterclaims ¶ 188. The Franchisees need to " 'show that the defendants understood the

---

1. The Counterclaims are devoid of any mention of which State's extortion law has been violated or even what that law might be.

scope of the enterprise and knowingly agreed to further its affairs through the commission of various offenses' " to state a § 1962(d) claim. *Morin v. Trupin,* 747 F.Supp. 1051, 1067 (S.D.N.Y.1990) (quoting *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.,* 567 F.Supp. 1146, 1154 (D.N.J.1983)). Franchisees have failed to plead any overt act nor the assent by any Movant to the conspiracy. Instead, they have only alleged that a RICO conspiracy "was formed at, or as a direct result of" a meeting alleged to have occurred sometime in early 1983. Bare allegations that individuals were interested in creating a franchise program fail to establish the particulars of a RICO conspiracy. *Id.; see also Stern v. Leucadia Nat'l Corp.,* 644 F.Supp. 1108, 1112 (S.D.N.Y.1986), *aff'd in part,* 844 F.2d 997 (2d Cir.), *cert. denied,* 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988).

General reallegation of numerous earlier paragraphs with the intention of making out RICO, state fraud, breach of contract, and other various state claims is not sufficient or proper. *Gregoris Motors,* 630 F.Supp. at 913. "RICO is a specialized statute requiring a particular configuration of elements. These elements cannot be incorporated loosely from a previous narration, but must be tightly particularized and connected in a complaint." *Id.* Parroting statutory language while generally referring the reader back to the previous 100 paragraphs in a complaint is inadequate. Franchisees' four RICO counterclaims therefore are dismissed.

## II. *Common Law Fraud*

In the Sixth Counterclaim, the Franchisees allege that "[b]y reason of the conduct set forth herein," that is, paragraphs 65 to 174, "Plaintiffs and Additional Defendants have engaged in a practice and course of conduct that has operated as a fraud." Counterclaims ¶ 195. Here too an attempt will be made to discern those occurrences of which the Franchisees complain.

■ To plead a claim for fraud, the Franchisees must allege in the body of the complaint:

(a) an express representation of a material fact;

(b) that this representation was false;

(c) that the representation was made with the intent to defraud;

(d) that Franchisees reasonably relied upon this representation; and

(e) that Franchisees suffered damages as a result.

*See Katara v. D.E. Jones Commodities, Inc.,* 835 F.2d 966, 970–71 (2d Cir.1987).

Rule 9(b)'s particularity requirement, which prohibits reliance upon " 'unsubstantiated conclusory allegations,' " applies to common law fraud as well. *Juster v. Rothschild, Unterberg, Towbin Gruntel & Co.,* 554 F.Supp. 331, 332 (S.D.N.Y.1983) (*quoting Vetter v. Shearson, Hayden, Stone, Inc.,* 481 F.Supp. 64, 65 (S.D.N.Y.1979)); *accord Di Vittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1243 (2d Cir.1987). There are several policy reasons for this, including

[t]he irreparable damage to reputations and goodwill, which inevitably results from charges of fraud, and the threat of baseless strike suits are ample reasons for careful judicial review of claims alleging fraud.

*Plount,* 668 F.Supp. at 205–06; *Somerville v. Major Exploration, Inc.,* 576 F.Supp. 902, 909 (S.D.N.Y.1983). Rule 9(b) also is designed to insure that all defendants to a fraud action are apprised of the particular wrongful conduct with which they are charged. *Jacobson v. Peat, Marwick, Mitchell & Co.,* 445 F.Supp. 518, 522 n. 7 (S.D.N.Y.1977); *see also Airlines Reporting Corp. v. Aero Voyagers, Inc.,* 721 F.Supp. 579, 582 (S.D.N.Y.1989).

■ To satisfy Rule 9(b), the Franchisees must allege the circumstances constituting the alleged fraud, including such matters as the time, place and contents of the false representation, as well as the identity of the persons making the misrepresentation and what was obtained or given up. The Counterclaims also must provide some factual basis for the allegations.

See, e.g., *Airlines Reporting Corp. v. Aero Voyagers, Inc.*, 721 F.Supp. 579, 582 (S.D.N.Y.1989) (mere recitation of the essential elements of fraud will not satisfy Rule 9(b)); *Hunter v. H.D. Lee Co.*, 563 F.Supp. 1006, 1012 (N.D.N.Y.1983) ("A pleading that simply avers the technical elements of fraud does not have sufficient informational content to satisfy [Rule 9(b)'s] requirement.").

■ Here, the Franchisees first seem to allege that because final changes were never made in the 1985 second amended prospectus and the proposed second amended prospectus was never filed with the Department of Law, the Franchisees were defrauded into purchasing an "unregistered" franchise. As part of this fraud, they seem to plead that on or about May 3, 1985, Stuart Zaro and Firstman met one or more times with Hogan and Chiappa and represented that the Zaros franchise program was "valuable" and worthwhile and that they "misrepresented the true state of affairs concerning the Zaro's franchise 'system.'" Counterclaims ¶ 106. During another meeting alleged to have occurred sometime in the month of May 1985, Firstman once again "misrepresented the true state of affairs concerning the Zaro's franchise 'system,'" this time to the Knoflas. *Id.* ¶ 114. Franchisees also plead that on July 2, 1985, Joel and Jeff Knolfas, who are not parties to this action and whose status is not explained, met with Friedman, who continued "the charade that Licensing was a *bona fide* franchisor." *Id.* ¶ 138. Finally, Franchisees allege that sometime between September and November 1986 Gandolfo met with Albert Firstman and Joseph Zaro and both allegedly misrepresented to Gandolfo "that Zaro's had a franchise 'program.'" *Id.* ¶ 140.

Not only are these allegations faulty for failing to specify the particular dates at issue, they are deficient with respect to scienter. The complaint must state facts giving rise to a strong inference of fraudulent intent, not conclusions. *Ouaknine*, 897 F.2d at 81; *Paper Corp. of the United States v. Schoeller Technical Papers, Inc.*, 742 F.Supp. 808 (S.D.N.Y.1990). The Sec-

ond Circuit has noted that "[c]learly, an inference that the defendants knew their statements to be false cannot be based on allegations which are themselves speculative." *Wexner v. First Manhattan Co.*, 902 F.2d 169, 173 (2d Cir.1990). Such is the case here, therefore the factual allegations that attempt to establish an inference that individual defendants knew that the statements were false have been pled inadequately.

Additionally, Franchisees fail to plead how or what damages were sustained by them as a specific result of any representations regarding the registration of the franchise. They have failed to state Licensing's registration status, and how any representations as to this status caused Franchisees to suffer damage. "Allegations that but for the fraudulent statements and omission, the plaintiffs would not have invested in the transaction in which they lost money are not sufficient." *Northwestern National Insurance Co. of Milwaukee, Wisconsin v. Alberts*, 741 F.Supp. 424, 433 (S.D.N.Y.1990) (quoting *In re Gas Reclamation, Inc. Securities Litigation*, 733 F.Supp. 713, 721 (S.D.N.Y.1990)).

■ Next, Franchisees allege that they were "provided" with franchise agreements that were false and fraudulent in that:

(a) the proposed franchise agreement referred to the first amended offering prospectus as the currently effective prospectus;

(b) the date of the most recent amendment of the prospectus was left blank in violation of New York law;

(c) Franchisees were not provided with the proposed second amended offering prospectus or with documents which the Attorney General suggested be included with that proposed prospectus; and

(d) Franchisees were not advised of certain rights they might have had under the New York Franchise Sales Act.

Counterclaims ¶ 66. These allegations fail to plead scienter, reliance, damages, or causation with specific particularity.

Franchisees also allege that by filing a lawsuit in the United States District Court for New Jersey for damages Zaro committed an act of fraud. *Id.* ¶¶ 144–52, 155–58. In connection with that lawsuit, they allege that an affidavit submitted by Friedman was fraudulent, *id.* ¶¶ 149–53, and that Kestenbaum, "in collusion" with Proskauer, Rose, Goetz and Mendelsohn, fraudulently asserted discovery objections, *id.* ¶¶ 155–58. Similar claims are asserted with respect to Zaro's actions in the Bankruptcy proceeding and New Jersey Landlord/Tenant Court.

These allegations again fail to plead reliance, damages or causation with the required particularity. Moreover, if true, they might give rise to a claim for discovery or Rule 11 sanctions but in no fashion constitute the basis for a fraud claim.

Finally, Franchisees appear to allege that they were defrauded by mailings which demanded required payments and threatened termination under the franchise agreements, *id.* ¶¶ 159, 171, that baked products purchased by Franchisees were not of a particular quality, *id.* ¶ 167, and that unsatisfactory architectural plans were prepared for the Gandolfo and Cinmar franchises, *id.* ¶¶ 172–73. These are primarily contract claims, and, as above, fail to state the necessary particulars to establish fraud.

For the reasons set forth above, the Counterclaims fail to state a claim of common law fraud with the particularity required by Rule 9(b). Fed.R.Civ.P. 9(b). The Sixth Count of the Counterclaim therefore is dismissed.

### III. *Breach of Contract*

In the Fifth, Seventh and Fourteenth Counterclaims, the Franchisees allege that if there was an agreement among the parties, then it was breached by the Movants and the Franchisees are entitled to some form of relief. As presently constituted, these claims do not meet Rule 8's pleading requirements. Fed.R.Civ.P. 8. The Rule requires the Franchisees to set forth a "short and plain statement of the case." However, such a pleading must, at

a minimum, allege the terms of the contract, each element of the alleged breach and the resultant damages in a plain and simple fashion. *See generally*, 5 Charles Wright & Arthur Miller, *Federal Practice and Procedure* § 1235 (1990).

No particular provision of any agreement is set forth in over 200 paragraphs. Additionally, Franchisees have failed to plead that they themselves have complied with any contracts at issue and that they have performed their obligations under such contracts, a basic requirement. *See* 2A J. Moore, *Moore's Federal Practice* ¶ 8–127 (1990); *Gross v. Gross*, 31 Misc.2d 934, 221 N.Y.S.2d 785, 787 (N.Y.Sup.Ct. 1961). These counterclaims therefore are dismissed.

### IV. *New Jersey Franchise Practices Act*

Franchisees' claim for violation of the New Jersey Franchise Practices Act, N.J.S.A. § 56:10–1, *et seq.*, is dismissed under Rule 56. It is a defense to a claim brought under the act by a franchisee that the franchisee has failed to comply substantially with the requirements imposed by the franchisor. *Id.* § 56:10–9. The Franchisees fail to allege that they are in compliance with the franchise agreements nor do they offer any facts establishing otherwise. The Franchisees are, however, in breach of their agreement for failing to make royalty payments. The Eleventh Counterclaim therefore must be dismissed.

The Tenth Counterclaim is an alleged violation of the New Jersey Consumer Fraud Act. N.J.S.A. § 56:8–1 *et seq.* Since this is a fraud remedy, it must meet Rule 9(b)'s particularity requirement, which the claim fails to do. Moreover, New Jersey courts require a showing of fraud that is unconscionable, deliberate and knowing. *See, e.g., De Simone v. Nationwide Mutual Insurance Co.*, 149 N.J.Super. 376, 373 A.2d 1025 (N.J.Super.Ct.Law Div.1977). Nowhere in the Counterclaims do the Franchisees present any facts in support of such an inference, thus mandating dismissal of this claim.

287

## V. *New York Franchise Sales Act*

The New York Franchise Sales Act prohibits the sale of a franchise when the Department of Law does not have a copy of a franchisor's offering prospectus on file. However, the Franchise Sales Act contains a three-year statute of limitations, New York General Business Law § 691(4). Franchisees allege that they purchased their franchises from June 1985 to April 1986. This is more than three years before a complaint was first filed in this action in November 1989. The Eighth Counterclaim therefore is dismissed pursuant to Rule 56, Fed.R.Civ.P.

The Franchisees assert that the Movants' violations of this act have been continuous, and that their claims therefore are timely. However, in *Fantastic Enterprises, Inc. v. S.M.R. Enterprises, Inc.*, 143 Misc.2d 124, 540 N.Y.S.2d 131 (N.Y.Sup.Ct. 1988), the court specifically held that a claim under this act is not tolled by a "continuing violation," but instead begins to run the date the parties entered into the franchise agreement. *Id.* at 129, 540 N.Y.S.2d 131. The Eighth Counterclaim therefore is dismissed.

The Franchisees also have alleged a violation of § 349 of New York's General Business Law. However, since they have failed to provide a short, plain statement of this claim, it is dismissed pursuant to Rule 8 of the Federal Rules of Civil Procedure.

## VI. *Connecticut Unfair Trade Practices Act*

Similarly, under the Connecticut Unfair Trade Practices Act, C.G.S.A. § 42-110 *et seq.*, no cause of action can be maintained if brought more than three years after the occurrence of the violation. *Fichera v. Mine Hill Corp.*, 207 Conn. 204, 541 A.2d 472 (1988). As pled, the sale of the Connecticut franchise to the Knoflas occurred in June 1985, more than three years before the filing of the first complaint in this series of actions in November 1989. The Twelfth Counterclaim therefore is untimely and is dismissed pursuant to Rule 56 of the Federal Rules of Civil Procedure.

The Franchisees also allege a violation of the Connecticut Franchise Act. However, they have failed to provide a short and plain statement of the grounds upon which this claim is based. It therefore is dismissed pursuant to Rule 8 of the Federal Rules of Civil Procedure.

### Conclusion

The Franchisees' Counterclaims under the New York Franchise Sales Act, the New Jersey Franchise Practices Act and the Connecticut Unfair Trade Practices Act are dismissed under Rule 56. The remaining federal RICO and state Counterclaims are dismissed under Rules 8 and 9(b) of the Federal Rules of Civil Procedure, with leave to replead granted.

It is so ordered.