6100 CLEVELAND, INC.,
et al., Plaintiffs,

v.

STAFF BUILDERS INTERNATIONAL,
INC., et al. Defendants.

No. 1:98 CV 1415.

United States District Court,
N.D. Ohio,
Eastern Division.

July 1, 1999.

James Douglas, Cleveland, OH, Kenneth J. Freeman, Solon, OH, for Plaintiff.

Kenneth Bravo, Cleveland, OH, Craig Tracienberg, Philadelphia, PA, for Defendant.

### Memorandum of Opinion and Order

GAUGHAN, District Judge.

Pending before the Court is the motion of defendants Staff Builders International, Inc. ("Staff Builders"), Stephen Savitsky, David Savitsky, Dale R. Clift and Sandy Parshall to dismiss Counts XII, VI and VII of plaintiffs' Second Amended Complaint. (Doc. 52). For the reasons stated below, the motion is granted in part and denied in part.

### Facts

Plaintiffs are 6100 Cleveland, Inc. ("Cleveland"), Orsinger Enterprises, Inc. ("Orsinger") and First Choice Medical Staffing, Inc. ("First Choice") (Sec.Am. Complt.¶¶ 1–3.) Defendants Staff Builders and Staff Builders Services, Inc. ("SBSI") are New York corporations and are franchisors of home health care businesses. (*Id.* at ¶ 4.) Stephen Savitsky, David Savitsky, Dale R. Clift and Sandy Parshall are officers and directors of Staff Builders. (*Id.* at ¶¶ 5–8.)

Plaintiffs are parties to franchise agreements with Staff Builders. Cleveland acquired the interest in a franchise agreement to operate a home health care business as Staff Builders' franchisee. (*Id.* at ¶¶ 13–15.) Orsinger entered into a Franchise Agreement with Staff Builders to operate a home health care franchise in Ohio and Monroe, Michigan. (*Id.* at ¶ 32.) First Choice entered into a Franchise Agreement with Staff Builders for the operation of nursing services to hospitals and physicians in eight counties in Ohio. (*Id.* at ¶¶ 75, 76.) Among claims for breach of the various franchise

agreements and other state law claims,[1] plaintiffs allege a claim against defendants under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* Read in the light most favorable to them, plaintiffs' complaint alleges that the defendants engaged in a pattern of racketeering activity to "steal" businesses from the plaintiffs who invested money and work into developing Staff Builders' franchises. Plaintiffs allege that Staff Builders intended to "implement [a] program of taking over the business operations of [its] franchisees"; Staff Builders, Stephen Savitsky, David Savitsky, Clift and Parshall engaged in a "series of illegal acts for the purpose of putting certain Staff Builders' franchisees out of business" and Staff Builders "was privately working behind the scenes to undermine, sabotage and seize the Plaintiffs' businesses and to defraud the Plaintiffs out of monies they had paid Staff Builders and future royalties." (Sec. Am. Complt. at ¶¶ 113–115.)

Defendants move to dismiss the RICO claim pursuant to Fed.R.Civ.P. 12(b)(6). Defendants contend that plaintiffs' complaint is deficient in pleading a RICO claim for three reasons: the complaint fails to allege (1) any predicate act of "racketeering activity"; (2) a "pattern of racketeering activity" and (3) a violation of any of the four RICO subsections. 18 U.S.C. § 1962(a)-(d).

Defendants also move to dismiss Counts VI and VII alleging violations of Ohio's Business Opportunity Purchaser's Protection Act, Ohio Rev.Code § 1334.01 and New York General Business Law on the ground that those claims are barred by the statute of limitations.

## Standard of Review

In considering a motion under Fed. R.Civ.P. 12(b)(6), "the court must construe the complaint in the light most favorable to the plaintiff [and] accept all factual allegations as true." *Wright v. MetroHealth Medical Center,* 58 F.3d 1130, 1138 (6th Cir.1995), *cert. denied,* 516 U.S. 1158, 116 S.Ct. 1041, 134 L.Ed.2d 188 (1996). A motion to dismiss will be granted only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cameron v. Seitz,* 38 F.3d 264, 270 (6th Cir.1994).

■ The district court may not grant a Rule 12(b)(6) motion based on disbelief of factual allegations in the complaint. *See Columbia Natural Resources, Inc. v. Ta-*

1. Count I alleges that Staff Builders breached its franchise agreement with Cleveland by failing to pay Cleveland royalties due under the agreement. Count II alleges that Staff Builders breached its franchise agreement with Cleveland by issuing Cleveland a notice of default. Count III alleges that Staff Builders has breached its franchise agreement with Orsinger by failing to pay certain royalties. Count IV alleges that defendant officers of Staff Builders entered into an agreement on behalf of Staff Builders and SBSI to purchase the franchised territory of Cleveland and Orsinger for $1,400,000 and that First Choice would be permitted to expand its franchise operations, but Staff Builders and SBSI have refused to remit the funds required to complete the purchase of the franchised territory and refused to permit First Choice to expand its franchise operations. Count V alleges that defendants have stolen the franchised territory of Cleveland and Orsinger in failing to close on an agreement to operate the Cleve-

land and Orsinger locations yet retaining the locations and equipment of those businesses. Count VI and Count VII allege violations of Ohio and New York franchise disclosure laws, Ohio's Business Opportunity Protection Act, Ohio Rev.Code § 1334.01 and New York General Business Law, § 680 *et seq.* Count VIII alleges that Staff Builders wrongfully purported to terminate the First Choice Franchise Agreement and otherwise improperly took control of First Choice's business. Count IX alleges that Staff Builders failed to comply with Ohio's Business Opportunity Protection Act. Count X alleges that Staff Builders converted equipment belonging to First Choice. Count XI alleges that Staff Builders failed to comply with Ohio's franchise disclosure laws for certain southern Ohio Staff Builders' properties. Count XIII alleges that Staff Builders owes $2250 in rent for the occupation of First Choice's former officers in Cleveland.

*tum,* 58 F.3d 1101, 1109 (6th Cir.1995), *cert. denied,* 516 U.S. 1158, 116 S.Ct. 1041, 134 L.Ed.2d 189 (1996) Nevertheless, the standard of review "require[s] more than the bare assertion of legal conclusions." *Id.* The Court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987).

### Discussion

**1. The RICO count.**

The RICO statute provides:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal ... to use or invest directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce....

(b) It shall be unlawful for any person through a pattern of racketeering activity or through the collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of an unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b) or (c) of this section.

18 U.S.C. § 1962

A "pattern of racketeering" activity is defined to require "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years ... after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). "Racketeering activity" is defined as

(A) any act or threat involving murder, kidnaping, gambling, arson, robbery, bribery, extortion, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), section 224 (relating to sports bribery), sections 471, 472, and 473 (relating to counterfeiting), section 659 (relating to theft from interstate shipment) if the act ... is felonious, section 664 (relating to embezzlement from pension and welfare funds), sections 891–894 (relating to extortionate credit transactions), section 1084 (relating to the transmission of gambling information), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511 (relating to obstruction of State or local law enforcement), section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering), section 1953 (relating to unlawful welfare fund payments), section 1955 (relating to the prohibition of illegal gambling businesses), sections 2314 and 2315 (relating to interstate transportation of stolen property), sections 2341–2346 (relating to trafficking in contraband cigarettes), sections 2421–24 (relating to white slave traffic), (C) any act which in indictable

under title 29, Unites States Code, section 186 (dealing with restrictions on payments and loans to labor organizations) or section 501(c) (relating to embezzlement from union funds), or (D) any offense involving fraud connected with a case under title 11, fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in narcotic or other dangerous drugs, punishable under any law of the United States.

18 U.S.C. § 1961(1).

In their RICO count, plaintiffs do not allege what particular subsection or subsections of 18 U.S.C. § 1962 they claim defendants have violated. (*See* Sec. Am. Com. ¶¶ 112–125.) In their RICO count, they allege, however, that defendants perpetrated acts which constitute "violations of 18 U.S.C. § 1341," the mail fraud statute. (Sec.Am.Complt.¶ 114.)[2] The only specific piece of mail to which plaintiffs' RICO count refers is a June 3, 1998 letter which plaintiffs allege Staff Builders used as a basis for terminating the franchises of First Choice and Cleveland. (*Id.* at ¶¶ 116–117.)[3] Plaintiffs allege that Staff Builders used the June 3, 1998 letter as a basis for terminating the franchises even though Staff Builders, Stephen Savitsky, David Savitsky, Clift and Parshall knew or had reason to know that the letter was false. (*Id.*).

Defendants argue that plaintiffs' RICO claim is deficient because it does not adequately plead any predicate RICO act. They argue that plaintiffs' allegations regarding the one specific incident of mail fraud identified in the RICO count, the June 3, 1998 letter, are not sufficient to plead a claim of mail fraud. Defendants assert:

**2.** Plaintiffs' complaint makes no other reference to any of the other predicate acts enumerated in § 1961(1).

**3.** The RICO count does not specifically identify what the June 3rd letter was. In paragraph 26 of the complaint, however, plaintiffs

Plaintiffs fail to identify the author of the June 3, 1998 letter or the falsity of its contents. Moreover, Plaintiffs fail to state with particularity which Defendants, if any, are responsible for the issuance of the June 3, 1998 letter. Most importantly, Plaintiff do not (and cannot) allege any reliance on the June 3, 1998 letter. **Quite simply, Plaintiffs do not allege reliance (and did not in fact rely) upon the June 3, 1998 termination letter.**

(Def. Br. at 7.)

 In order to plead a claim of mail fraud, the plaintiff must allege that the defendants made representations or omissions of material fact to the plaintiff upon which the plaintiff relied to his detriment. *Bender v. Southland Corporation,* 749 F.2d 1205, 1216 (6th Cir.1984). "Moreover, FRCP 9(b) requires that fraud be pleaded with particularity. To satisfy FRCP 9(b), a plaintiff must at a minimum allege the time, place and contents of the misrepresentation(s) upon which he relied." *Id.* In *Bender,* the Sixth Circuit affirmed the dismissal of a RICO claim brought by a franchisee against a franchisor based upon allegations of mail fraud under Fed.R.Civ.P. 12(b)(6). The Court reasoned:

Count III of plaintiffs' complaint is deficient in several respects. First, the complaint does not allege that Southland acted with intent to defraud. Although intent to defraud is a state of mind that may be averred generally, FRCP 9(b), it must be alleged. Second, the plaintiffs' complaint does not allege what misrepresentations (or omissions) of material fact Southland made to plaintiffs that they reasonably relied upon to their detriment. Hence, the plaintiffs have inad-

allege that on June 3, 1998, Staff Builders sent Cleveland a letter stating that it was in default of its franchise agreement with Staff Builders and owed Staff Builders the sum of $230,873.20 (Sec.Am.Complt.¶ 26.)

equately alleged the requisite elements of mail fraud.

*Id.* at 1216.

■ Plaintiffs' allegations with respect to the June 3rd letter are inadequate to plead mail fraud. Plaintiffs allege that the contents of the letter were false and that defendants knew or should have known that the contents were false when the letter was written, but plaintiffs do not allege that they relied upon the alleged false representations in the letter. The letter states that Cleveland was in default of its franchise agreement with Staff Builders and owed Staff Builders $230.873 10. (Sec.Am.Complt.¶ 26.) Plaintiffs do not allege that they ever believed this statement by Staff Builders or took any detrimental action in reliance upon it. Thus, even though plaintiffs assert that defendants falsely stated in the letter that Cleveland was in default of its franchise agreement and owed Staff Builders money as a means of asserting control over the franchise, plaintiffs have not alleged sufficient facts to indicate that they were defrauded by the statements made in the letter. *See Grantham & Mann, Inc. v. American Safety Products,* 831 F.2d 596, 606 (6th Cir.1987) (mail fraud requires reliance) and *Central Distributors of Beer, Inc. v. Conn.,* 5 F.3d 181 (6th Cir.1993), *cert. denied,* 512 U.S. 1207, 114 S.Ct. 2678, 129 L.Ed.2d 812 (1994) (victim must detrimentally rely). As defendants point out, plaintiffs' actions indicate that they did not rely in that they have at all times disputed that

Cleveland owes Staff Builders money and defaulted on its franchise agreement.

In their opposition brief, plaintiffs do not come forward with any facts from which an inference of reliance on the June 3rd letter may be drawn. Instead, they assert "several individual counts" of their complaint other than the RICO count "describe the predicate acts of mail fraud and extortion." (Opp. at 3.) First, they state that the June 3rd letter "further indicated that unless 6100 Cleveland and Richard Sterben agreed to accept the terms of an offer dictated by Staff Builders and Defendant Dale Clift, Staff Builders acting by and through certain individuals set forth in the Complaint would simply take the Plaintiffs business," and this conduct "describes a violation that satisfies the elements of Extortion of the lesser includable offense of Coercion pursuant to Ohio Revised Code Section 2905.11 and/or 2905.12." (Opp. at 4.) Second, they attempt to articulate several other purported instances of mail fraud described in other counts of the complaint. (*Id.* at 4–6.)[4] Finally, they also assert that defendants engaged in conduct that constitutes breaking and entering under Ohio law, "a lesser included offense of Burglary which is an enumerated predicate offense contained within 18 USC 1961." (Opp. at 6.)

Plaintiffs' brief in opposition does not demonstrate that plaintiffs have sufficiently pled a RICO predicate act. Plaintiffs' assertions in their opposition brief that the

---

4. For example, they state:
As a predicate to the [June 3rd] letter hereinbefore discussed, it is alleged in Count III which incorporates Count II by reference, that Staff Builders (through its ongoing Racketeering-extortionist) activities began to place a financial squeeze upon 6100 Cleveland by failing to pay royalties dues to its wholly owned subsidiary and co-plaintiff Orsinger Enterprises. During the period of wrongfully and intentionally inflicting financial distress upon the Plaintiffs, in Count IV, which references the foregoing Counts by reference, Staff Builders (the enterprise) acting by and through its agents and co-defendants Stephen Savitsky, Ed Teixeira, Dale Clift, David Frank

and Sandy Parshall, entered into an Agreement that they would take over 6100 Cleveland and Orsinger for the sum of 1.4 million Dollars. Thereafter, using the artifice of the "purchase" of the business to gain control of the Plaintiffs' operations, Defendant Gary Marcus sent a letter dated June 8, 1988 which indicated that the Defendant Staff Builders would not complete the transaction. This was the final step in the theft of Plaintiffs business by the enterprise. The theft was completed by the use of the United States Mail and other carriers including fax and wire transmissions. (Mail Fraud).
(Opp. at 4–5.)

defendants engaged in conduct which constitutes extortion and coercion under Ohio law are conclusory and are nowhere set forth in plaintiffs' complaint. There is no mention of extortion, coercion or Ohio Rev. Code § 2905.11 or § 2905.12 in the Second Amended Complaint. There are no allegations that plaintiffs were threatened by defendants or coerced. Plaintiffs' statement that defendants engaged in conduct constituting breaking and entering under Ohio law is likewise nowhere alleged in the complaint. Further, contrary to plaintiffs' assertion, burglary is not enumerated in § 1961 as a predicate act.

Plaintiffs' purported description of other instances of mail fraud in the complaint are likewise deficient. Plaintiffs merely state generally that the mails were used by defendants in the course of implementing the alleged scheme to take control of plaintiffs' businesses. However, plaintiffs identify no specific fraudulent representations made through the mails in the course of implementing the scheme, nor do they state to whom the representations were made or whether or how plaintiffs relied on them. Without such specific allegations contained in the pleading, plaintiffs have failed to allege a predicate act of mail fraud. *See Bender v. Southland,* 749 F.2d at 1216.

Because plaintiffs fail to plead a requisite predicate act of racketeering activity, they have failed to state a claim under RICO.[5]

### 2. Counts VI and VII.

Plaintiffs allege that Inducon Funding Corporation entered into a franchise agreement with Staff Builders on September 15, 1990 and that Inducon was purchased by Cleveland. (Sec.Am.Complt. ¶¶ 13–15.) In counts VI and VII, plaintiffs allege that prior to entering into its franchise agreement with Staff Builders, Inducon did not receive any disclosures as required by Ohio's Business Opportunity Protection Act, Ohio Rev.Code § 1334.01 and New York General Business Law § 680 *et seq.* and, therefore, Staff Builders has violated those laws. (*Id.* at ¶¶ 62–73.) In that defendants have not argued that plaintiffs cannot assert a claim under both Ohio and New York law, the Court addresses whether the claims asserted are barred by the statute of limitations.

Defendants assert that plaintiffs' claims under the franchise disclosure laws are barred by the statute of limitations. (Def. Br. at 15–17.) Defendants assert that the statute of limitations for Ohio's disclosure law is 5 years, relying on Ohio Rev.Code § 1334.10(C),[6] and the statute of limitations for New York's law is three years, relying on *Zaro Licensing, Inc. v. Cinmar, Inc.,* 779 F.Supp. 276 (S.D.N.Y.1991). In *Zaro,* the Court stated that "[New York's] Franchise Sales Act contains a three-year statute of limitations ... and a claim under the act is not tolled by a 'continuing violation.'" *Id.* at 287. Defendants assert that since Inducon entered into its franchise agreement in 1990, plaintiffs' claims in this case (brought in 1998) are barred.

■ In its opposition brief, plaintiffs do not address defendants' assertion that their claim under New York's disclosure law is barred. However, they argue that their claim under Ohio's law is not barred

---

**5.** Even assuming plaintiffs have sufficiently pled some RICO predicate act, there are insufficient allegations to demonstrate a "pattern of racketeering activity" as required to support a RICO claim. *See Eizonas, Inc. v. Dollar Savings and Trust Co.,* Case Nos. 92–3838, 92–3860, 1993 WL 501597, *2 (6th Cir. 1993) (holding that there was no RICO pattern where "the scattered predicate acts occurred over a period of no more than nine months, and plaintiffs alleged no facts tending

to show that ... there was any threat of continuing racketeering activity [after the defendants] achieved their goal" of hurting the plaintiffs' businesses).

**6.** The statute states:

No action under sections 1334.01 to 1334.15 of the Revised Code may be brought to recover more than five years after the violation. Ohio Rev.Code § 1334.10(C).

relying on *RY/EH Inc. v. Arthur Treachers, Inc.,* 115 Ohio App.3d 332, 335, 685 N.E.2d 316 (1996). In *RY/EH,* the Mahoning County Court of Appeals recognized that the statute of limitations for bringing an action under sections 1334.01 to 1334.15 of the Ohio Revised Code is five years from the occurrence of the violation. *Id.* at 334, 685 N.E.2d 316. However, the Court held that the statute of limitations in a franchisee's action to rescind a franchise agreement and recover all payments made under the agreement based on the franchisor's alleged failure to provide written disclosures and notice of the franchisee's right to cancel as required by the Ohio law was not barred by the statute of limitations even though the case was brought more than five years after the parties entered into their franchise agreement. The Court found that the statute of limitations did not begin to run on the date the parties entered into the franchise agreement because the franchisees alleged that the defendant had never made the disclosures required under the law. The Court stated that "if the seller never makes the disclosures ... the violation is a continuing one." The Court stated that reading the statute of limitations to commence to run on the date the parties entered into their agreement where the franchisor never made the required disclosures "would allow a franchisor to completely disregard all of the state's disclosure requirements and argue ... that the franchisee did not timely pursue its remedies even though it didn't have notice of those remedies because the franchisor did not comply with its duty to so inform the franchisee under the Act." *Id.* at 319.

Plaintiffs state that the statute of limitations does not bar its claim under the Ohio act because "the required disclosures have still not been made" by the defendants. (Opp. at 7.) Defendants reply that Cleveland, the plaintiff in this case, was not the original party to the franchise agreement with Staff Builders, Inducon Funding Corporation was. Defendants assert that even if the five year statute of limitations

"would not bar Inducon," the statute "should" bar the "very remote and attenuated claim of Cleveland." (Rep. at 8.) Defendants submit no Ohio authority in support of this assertion. They rely on "Interpretive Guides to Franchising and Business Opportunity Ventures Trade Regulation Rules," 44 Fed.Reg. 49966, (August 24, 1979), CCH Bus Fran. ¶ 6220. They state that the "Federal Trade Commission Rule does not grant the transferee a right of disclosure, nor does the FTC Rule grant a remedy to a franchisee who purchased a franchise from a third party." (Rep. at 8.)

The Court denies defendants' motion to dismiss plaintiffs' claim under Ohio's franchise disclosure law, count VI. There are no allegations as to when Inducon and/or Cleveland became aware that Staff Builders failed to make the disclosures required under the law Plaintiffs state in their opposition brief and defendants do not dispute that the required disclosures have never been made. Under these circumstances, the Court could not conclude as a matter of law that the statute of limitations began to run, as defendants assert, as of the time Staff Builders and Inducon entered into their franchise agreement. *See RY/EH.* Further, even if defendants are correct that the "Federal Trade Commission Rule does not grant the transferee a right of disclosure" and does not "grant a remedy to a franchisee who purchased a franchise from a third party," defendants have not provided authority demonstrating that Ohio's law is similar. Therefore, the Court does not find that Cleveland cannot assert a claim under Ohio's law as a matter of law.

■ As to the New York law, however, defendants have provided the Court with authority which demonstrates that the claim under New York's franchise disclosure law is barred by the statute of limitations. The New York law claimed to be violated has a three year statute of limitations (*see* New York General Business Law

§ 691(4)), and New York courts have held that a claim under the New York law is not tolled by a continuing violation but begins to run on the date the parties entered into their franchise agreement. *See Zaro Licensing, Inc. v. Cinmar, Inc.,* 779 F.Supp. 276 (S.D.N.Y.1991). Therefore, defendants' motion to dismiss Count VII on the ground of the statute of limitations is granted.

## Conclusion

For the reasons stated above, the Court denies defendants' motion to dismiss Count VI, but grants the motion as to Counts XII and VII.

IT IS SO ORDERED.