Alice HIRT, et al., Plaintiffs,

v.

Bill RICHARDSON, Secretary U.S. Department of Energy, et al., Defendants.

No. 1:99–CV–933.

United States District Court, W.D. Michigan, Southern Division.

Jan. 8, 2001.

Terry J. Lodge, Toledo, OH, Kary Love, Kary Love, Attorney at Law, Holland, MI, for Alice Hirt, Anabel Dwyer, Citizens for Alternatives to Chemical Contamination, Kathryn Cumbow, Robert Anderson, Doris Schaller Vernon, Terry Miller.

Terry J. Lodge, Toledo, OH, for Mohawk Council of Akwesasne, Association of Iroquois and Allied Indians, Concerned Citizens of Renfrew County, Northwatch, Canadian Coalition for Nuclear Responsibility, Nuclear Information and Resource Service, Physicians for Social Responsibility, Blue Ridge Environmental Defense League.

Robert I. Dodge, U.S. Attorney's Office, Western District of Michigan, Grand Rapids, MI, for Bill Richardson, Secretary,

U.S. Department of Energy, USA, John and Jane Doe.

## OPINION

ENSLEN, Chief Judge.

This matter is before the Court on Defendants' Motion for Judgment on the Pleadings pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(c). Defendants assert in this Motion that Plaintiffs' claims are now moot and that Plaintiffs now lack standing. The Court will grant Defendants' Motion.

## I. Introduction

In this action under the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.,* Plaintiffs seek injunctive and declaratory relief to enjoin Defendants from shipping nuclear material, mixed oxide uranium ("MOX"), from the United States and Russia to Canada. The shipments were to occur as part of the Parallex Project. The Parallex Project is an experimental test project which is supposed to combine MOX fabricated in the United States with that made in Russia to fuel a Canadian Deuterium Uranium ("CANDU") reactor. This program is but one of several programs that exist in a combined United States and Russian effort to address the real and ever-present danger of nuclear proliferation. The test location is at the Chalk River Laboratories in Chalk River, Ontario, Canada. A detailed explanation of the Parallex Project and the background behind the Project is contained in the Court's December 17, 1999 Opinion. *Hirt v. Richardson,* 127 F.Supp.2d 833 (W.D.Mich.1999).

On December 6, 1999, Plaintiffs filed a Complaint alleging that the Department of Energy ("DOE") had violated NEPA in its actions regarding the Parallex Project. In particular, Plaintiffs allege that Defendants did not comply with the requirements of NEPA when Defendants issued an Environmental Assessment ("EA") that had a finding of no significant environmental impact ("FONSEI"); such a finding makes it unnecessary for an agency to publish a more detailed Environmental Impact Statement ("EIS") under NEPA. Plaintiffs assert that in coming to its conclusion, the DOE violated NEPA because the conclusion expressed in the EA was arbitrary, capricious, and an abuse of discretion. The Complaint requested a Temporary Restraining Order and Preliminary Injunction enjoining Defendants from shipping the MOX across the state of Michigan and into Canada.

On December 7, 1999, this Court granted the Temporary Restraining Order. On December 14 and 15, 1999, the Court took evidence and heard arguments on the Motion for a Preliminary Injunction. In a December 17, 1999 Opinion and Order, this Court declined to grant the Preliminary Injunction. *Hirt v. Richardson,* 127 F.Supp.2d 833 (W.D.Mich.1999). Although this Court found that Plaintiffs were likely to succeed on the merits because evidence suggested that the DOE had improperly committed itself to the Parallex Project before completing the EA, the DOE had impermissibly segmented the EA with respect to the Russian shipment portion of the Project, and that Plaintiffs would be irreparably harmed by these failures in the decision-making process, the Court denied issuing the Preliminary Injunction on equitable grounds. *Id.* at 848–49. The Court deemed that the important considerations of United States foreign policy and the interest and prerogative of the Executive branch in deciding and carrying out such foreign policy outweighed the possible injuries to the Plaintiffs. *Id.* at 847–49.

Plaintiffs filed a First Amended Complaint on March 2, 2000 adding other parties as plaintiffs, adding Counts 8 and 9, and requesting another TRO and Preliminary Injunction. The Court denied Plaintiffs' second request for a TRO, and granted Plaintiffs' request to file a Second Amended Complaint. On June 30, 2000,

this Court granted Defendants' Motion denying Plaintiffs' second request for a Preliminary Injunction and dismissing Counts 8 and 9 for lack of subject matter jurisdiction.

On October 2, 2000, Defendants filed the present Motion. In their Motion, Defendants state that due to the completion of the transportation portions of the Parallex Project by the United States and Russia, Plaintiffs' claims are now moot and this Court lacks subject-matter jurisdiction. Defendants also contend that the completion of the transportation facet of the Project means that Plaintiffs lack standing.

## II. Motion for Judgment on the Pleadings

Defendants base their Motion for Judgment on the Pleadings on Federal Rule of Civil Procedure 12(b)(1) and 12(c). Pursuant to Rule 12(b)(1), a party may assert the defense of lack of subject matter at any time by motion. Fed. R. Civ. Pro. 12(b)(1). Rule 12(c) affords a party the ability to make a motion on the pleadings after the pleadings are closed. Fed. R. Civ. Pro. 12(c).

■ Motions to dismiss under 12(b)(1) for lack of subject matter jurisdiction come in two forms: facial and factual. *Ohio National Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990). A facial attack is a challenge to the sufficiency of the pleading itself. *Id.* at 325. On such a motion, the court must take the material allegations as true and construed in the light most favorable to the nonmoving party. *Id.* When reviewing a factual challenge, there is no presumptive truth accorded the pleadings and a court must weigh the conflicting evidence to arrive at the conclusion that subject matter jurisdiction does or does not exist. *Id.*

In this instance, the parties argue over whether actions taken subsequent to the filing of the Amended Complaint make it moot. A finding of mootness by the Court would render this Court unable to hear the Amended Complaint for lack of subject matter jurisdiction. Therefore, this is a factual attack and the Court can review and weigh the evidence presented by the parties to determine whether it has subject matter jurisdiction in this case.

## III. NEPA

■ A federal court has jurisdiction over a NEPA challenge pursuant to the Administrative Procedures Act. *Environmental Defense Fund v. Tennessee Valley*, 468 F.2d 1164, 1171 (6th Cir.1972). As pointed out by this Court in its previous decision in this case, NEPA imposes procedural duties on federal agencies. *Hirt*, at 838 (citing *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 558, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978)). An agency's decisions will only be set aside by a federal court if they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. *Sierra Club v. Slater*, 120 F.3d 623, 632 (6th Cir.1997). A federal court may not substitute its judgment for that of the agency's, and the court need only determine whether the agency adequately reviewed the issue and had a "hard look" at the environmental impact of its decision. *Kleppe v. Sierra Club*, 427 U.S. 390, 96 S.Ct. 2718, 49 L.Ed.2d 576 (1976); *Neighbors Organized to Insure a Sound Env't, Inc. v. McArtor*, 878 F.2d 174, 178 (6th Cir.1989).

NEPA requires that a federal agency produce an EIS for every "major Federal action [ ] significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(c). An EIS, however, is not always mandated. According to the regulations issued by the Council on Environment Quality, an agency generally must prepare an EA which enunciates "sufficient evidence and analysis for determining whether to prepare an environmental impact statement or a finding of no significant environmental impact." 40 C.F.R.

§ 1508.9. A FONSEI means an EIS is not required by law. 40 C.F.R. § 1501.4(e).

## A. Mootness

■ Defendants maintain that because the shipments of MOX from the United States and Russia to Canada are now complete, Plaintiffs' claims under NEPA are moot. Mootness is a jurisdictional question. Article III of the Constitution limits the reach of the federal courts to adjudicating only actual, ongoing cases or controversies between litigants. *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1982); *Kentucky Right To Life, Inc. v. Terry*, 108 F.3d 637, 644 (6th Cir.1997). A federal court cannot exercise jurisdiction over a dispute in which a judgment will in no way affect the legal relations of the parties who have the adverse legal interests. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

■ The Court must assess the issue of mootness by examining "whether an actual controversy between the parties exists in light of intervening circumstances." *Brock v. International Union, UAW*, 889 F.2d 685, 690 (6th Cir.1989). If events occur during the pendency of the litigation that render a decision on the merits meaningless or cause a court not to be able to grant the requested relief, the case becomes moot. *Carras v. Williams*, 807 F.2d 1286, 1289 (6th Cir.1986). Generally, when a federal court is "not in a position to prevent what has already occurred" and plaintiffs cannot demonstrate that defendants' actions are capable of repetition that may evade review, the issue is deemed moot. *Neighbors Organized to Insure a Sound Env't, Inc. v. McArtor*, 878 F.2d 174, 178 (6th Cir.1989); *see also Romulus v. County of ·Wayne*, 634 F.2d 347, 349 (6th Cir.1980).

In their Motion, Defendants indicate that the MOX shipment of the United States from Los Alamos, New Mexico, arrived at Chalk River on January 14, 2000, and that the Russian MOX shipment arrived at the reactor on September 25, 2000. (Def. Mot. at 1, and Exh. 1.) Defendants contend that the completion of the MOX shipments caused Plaintiffs' Complaint to become moot because the Court can no longer grant relief to stop the shipments and there exists no other form of meaningful relief. Plaintiffs counter that prevention of the shipments was but an interim goal in their legal fight.[1] The real end game, assert Plaintiffs, is a better environmental document, the result of some sort of declaration that the DOE's EA did not comply with the requirements of NEPA.

Plaintiffs then press the argument that based on the fact that the Project is in the testing phase, a case and controversy still exists and meaningful relief can still be granted. The Plaintiffs' proposed relief includes an order from the Court requiring the DOE to amend the EA to include the potential effects of MOX testing·at Chalk River, and/or an amendment to the EA/FONSEI indicating that only a single shipment from each the United States and Russia would take place under the Program. Plaintiffs point out that to ensure compliance with such an order, the Court could order that moneys from the United States intended for the Project be withheld.

Plaintiffs support their arguments by citing to *Columbia Basin Land Protection Ass'n v. Schlesinger*, 643 F.2d 585, 591–92 n. 1 (9th Cir.1981), for the proposition that even if a project that has NEPA violations is complete, such a state of completeness does not render the case moot. In *Columbia Basin*, a group of farmers sued under NEPA regarding the construction of 191

---

1. Although the Court is generally predisposed to allowing litigants a certain amount of literary license in their pleadings and motions, Plaintiffs' use of terms denoting animal anatomy and· foul matter in reference to the DOE and its actions detracts from their arguments.

powerline towers. *Id.* at 590. Although the *Columbia Basin* Court did not require the removal of the towers, dicta in the decision did imply that such a course of action was possible. In rejecting the argument of the dissent, the majority states:

> were this Court to find the EIS inadequate, or the decision to build ... arbitrary and capricious, the agency would have to correct the decision making process, and ultimately could be required to remove the line from this route. Clearly, therefore, this case presents a live controversy with concrete facts, and parties with adverse interests.

*Id.* at 591 n. 1.

Plaintiffs' case, however, is easily distinguishable from *Columbia Basin.* In that case, the plaintiffs were challenging a set of circumstances which, as that court pointed out, could actually be undone. Here, despite the Plaintiffs' best efforts to now characterize their Amended Complaint otherwise, Plaintiffs' Complaint specifically "challenges DOE's publishing of an [EA] and issuance of a [FONSEI] instead of preparing a full [EIS] for the **fabrication and shipment of the aforesaid MOX fuel through and across the state of Michigan.**" (Plaint. Compl. at ¶ 2) (emphasis added.) Almost every paragraph in the Complaint deals with the alleged dangers and catastrophes that the MOX shipments from the United States and Russia for testing might encounter, but were not properly dealt with in the EA. The Court can find only four paragraphs, 38, 39, 43, and 61, out of the original Complaint's 61 paragraphs, that do not deal with the transportation aspect of the Project. Only in paragraph 43 of the Complaint do Plaintiffs contest the EA with regard to the "test" portion of the Project. Simply stated, the Amended Complaint fails to allege any factual basis for the prospect of environmental damage after the shipments take place for this test phase.

The heart and soul of Plaintiffs' Amended Complaint is the fabrication and transportation of the MOX for testing at the CANDU. Unlike *Columbia Basin,* none of the tools at the Court's disposal can undo the two shipments of MOX that have already occurred. None of these tools allow the Court to undo the completed fabrication of the MOX in the United States. Any new EA done by the DOE, and a new corresponding EIS, addressing the concerns of the Plaintiffs regarding fabrication and transportation of MOX for testing would not undo what has already taken place. Arguments by Plaintiffs over what the United States and Russia will do if the Project is a success are inconsequential as they have no bearing on Plaintiffs' allegations about the DOE's deficient EA regarding the fabrication and shipment of MOX for testing.

■ In addition, based on the foreign policy and Executive branch implications of the Parallex Project, this Court indicated 'in its prior decisions that stopping the test through injunction was simply beyond its equitable powers. *Hirt v. Richardson,* 127 F.Supp.3d 833, 848–49 (W.D.Mich. 1999). The Court implied in its original decision that its decision on whether to grant the preliminary injunction would probably be the last word in this case. *Id.* at 847 ("[T]he Court must decide the case knowing that its decision will probably be the final decision in this case if relief is denied.") That prediction has now taken form. Therefore, since the Court has expressed that equitable concerns do not allow it to undo the MOX fabrication that has taken place nor retrieve the MOX shipments from the United States and Russia to Canada, and no injunctive or declaratory relief, either in the form of forcing the DOE to produce a new EA or EIS, would subsequently give the Court the equitable power to stop the Parallex Project where it had none before, the case is moot.

Plaintiffs' argument that this case falls within the limited exception to mootness of a case capable of repetition yet evading review is unpersuasive. Although there may indeed be future MOX shipments from the United States and Russia, such repeat shipments are no more likely to evade review than did these two shipments.

The Court's finding of mootness means that this Court no longer has subject-matter jurisdiction over this case, and must grant Defendants' Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(b)(1) and (c). Given the Court's finding of mootness, it need not address the issue of standing raised by Defendants in this Motion.

Plaintiffs have made a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. In their Motion, Plaintiffs repeat their arguments regarding the DOE's improper commitment of resources to the Project prior to completion of the EA, and the DOE's improper segmentation of the Russian portion of the Project. In addition, Plaintiffs allege that the EA did not properly address the impact of the Project with regards to several international treaties. In finding that the case is moot due to activities that occurred after the filing of the Complaint and its amendments, and that this Court lacks subject matter jurisdiction, Plaintiffs' Motion is also moot. The Court will deny this Motion.